IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEBANON FARMS DISPOSAL, INC., :
          :  CIVIL ACTION NO. 1:CV-03-0682
     Plaintiff  :
          :  (Judge Kane)
    v.      :
          :
COUNTY OF LEBANON AND THE :
GREATER LEBANON REFUSE  :
AUTHORITY,       :
     Defendants :

## MEMORANDUM AND ORDER

Before the Court are the following motions:  (1) a motion to dismiss filed by the County of Lebanon; (2) a motion to dismiss and a motion to abstain filed by the Greater Lebanon Refuse Authority; and (3) a motion for partial summary judgment filed by Plaintiff Lebanon Farms Disposal, Inc. The motions have been fully briefed and are ripe for disposition.

I.  **Background**

Plaintiff Lebanon Farms Disposal, Inc. is a waste collector operating in and around Lebanon County which alleges that it is engaged in interstate commerce.  (Doc. No. 1, Compl. ¶ 28).  Plaintiff filed the above captioned civil action challenging Lebanon County Municipal Waste Management Ordinance No. 15 (June 6, 1991) ("Ordinance"), which governs the collection, transportation, and disposal of municipal waste generated in Lebanon County, and the Rules and Regulations promulgated by Greater Lebanon Refuse Authority ("GLRA" or "the Authority") related to the municipal waste

ordinance.  Plaintiff alleges that this waste management scheme violates the Commerce Clause of the

United States Constitution and that the licensing requirement in the Ordinance violates Act 90 of 2002,

H.B. No. 2044; Pub. L. 596 (June 29, 2002), codified at 27 Pa. C.S.A. §§ 6201-6209 ("Act 90").

Plaintiff seeks declaratory relief (Count I) and damages (Count II) under the Commerce Clause against

the County of Lebanon ("County") and GLRA, and brings a retaliation claim pursuant to 42 U.S.C. §

1983 against GLRA (Count IV).   Count V is a state law claim against both Defendants for violation of

Act 90.[1]

The Pennsylvania legislature enacted the Municipal Waste Planning, Recycling and Waste

Reduction Act, 53 P.S. §§ 4000.101-4000.1904 ("Act 101") in 1988.  The Act was intended to

protect public health and the environment by ensuring adequate capacity for municipal waste and

encouraging recycling, and shifted the "primary responsibility for developing and implementing

municipal waste management plans from municipalities to counties."  53 P.S. § 4000.102(b)(10);

see also § 4000.102(a).  Act 101 assigned counties with the duty to plan for adequate processing and

disposal for waste generated within the county and empowered counties to implement licensing

requirements and enact ordinances, regulations, and standards for processing and disposing of

municipal waste.  53 P.S. § 4000.303; see also §§ 4000.501; 4000.502 (detailing required content

and timing of municipal waste plans).

In response to Act 101, Lebanon County enacted the Lebanon County Municipal Waste

Management Ordinance at issue here and developed a ten year plan for waste disposal.  The 1990

_____

[1]  Plaintiff has withdrawn Counts III, a § 1983 procedural due process claim, and VI, a state
law claim for invalid monetary penalty assessments, against both Defendants.

Plan has since been superceded by the Lebanon County Municipal Waste Management Plan 2000 to

2010.  (Doc. No. 15, ex. A).  The Ordinance establishes a licensing and waste flow control scheme

regarding municipal waste generated within the County.  (Doc. No. 1, ex. A, Ordinance No. 15 at §§

2-3).  It requires any waste collectors within the County to obtain a license from the Authority (GLRA)

for that purpose.  Id. at § 2(a).  Regarding waste flow control, the Ordinance provides:

> (a) Except as provided in (b) and (c) below, all Regulated Municipal Waste shall be
> delivered to a Designated Facility.
>
> (b) Delivery of Regulated Municipal Waste[2] to other sites pursuant to the Plan may
> occur only as permitted by rule, regulation, ordinance, or order duly issued by the
> Authority.
>
> (c) Nothing herein shall be deemed to prohibit Source Separation or Recycling or to
> affect any sites at which Source Separation or Recycling may take place.

Id. § 3.  "Designated Facility" is defined as:  "Any municipal waste storage, collection, transfer,

processing, or disposal facility or site constructed, owned, or operated by or on behalf of the

Authority."  Id. § 1.  The Ordinance gives GLRA the power and duty to implement the Plan and

Ordinance and requires it to adopt and enforce rules and regulations which, among other things, identify

---

[2]"Regulated Municipal Waste" is defined in the Ordinance as:
Any solid waste generated or collected within the County which is garbage, refuse,
industrial lunchroom or office waste and other material, including solid, liquid, semisolid
or contained gaseous material, resulting from operation of residential, municipal,
commercial or institutional establishments and from community activities and any sludge
not meeting the definition of residual or hazardous waste under Act 97 from a
municipal, commercial or institutional water supply treatment plant, wastewater
treatment plant or air pollution control facility.  The term does not include Source
Separated Recyclable Materials.
(Doc. No. 1, Ex. A, Ordinance § 1).

the Designated Facility and establish a fee schedule for use of the System[3] and violations of the

regulations.  Id. § 4.

Pursuant to this mandate, GLRA implemented rules and regulations, most recently on October

2, 2002.  (Doc. No. 1, Ex. B, Regulations).  The purposes of the Regulations, as provided therein, are:

> [T]o protect the health and welfare of the residents of Lebanon County and to provide
> a means whereby GLRA can effectively and efficiently (a) manage the storage,
> collection, transportation, processing and disposal of solid waste generated in Lebanon
> County and (b) carry forth its duties, obligations and responsibilities to implement the
> 2000 Lebanon County Solid Waste Management Plan.

Id. at 2.  Consistent with the directive of the Ordinance, the Regulations identify the Designated Facility

for Lebanon County:

> The Greater Lebanon Refuse Authority Landfill is the designated site for municipal
> waste and construction/demolition waste generated in Lebanon County.  All Regulated
> Municipal Waste collected by a commercial waste service, shall be transported directly
> from the point of collection to the GLRA facility or other approved point of delivery in
> accordance with these Rules and Regulations.

Id. at 15.  The Regulations also establish a licensing system to be administered by GLRA and provide

for penalties for diverting regulated municipal waste to facilities other than the GLRA facility "without

the prior written approval of GLRA . . . ."  Id. at 30.

Plaintiff challenges the waste flow control scheme described above, claiming that because the

only designated waste disposal facility is the GLRA facility, the Ordinance and Regulations facially

discriminate against interstate commerce.  Plaintiff further claims that the licensing scheme created by

---

[3]The Ordinance allows the Authority to set "tipping fees," which are "the rates that a
disposal facility or transfer station charges the hauler who deposits waste at the facility."  Atl.
Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. County, 48 F.3d 701,
707 n.10 (3d Cir. 1995).

the Ordinance and Regulation violates Act 90, which provides that "no county and no municipality may implement a municipal waste or residual waste transportation authorization or licensing program after the effective date of this chapter." 27 Pa. C.S.A. § 6203(c).

The County has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and GLRA has filed a motion to dismiss for failure to state a claim and for various procedural deficiencies, and motion to abstain. Defendants argue that Plaintiff's complaint fails to state a claim upon which relief can be granted, and Defendant GLRA argues that this Court should abstain under the Burford or Pullman abstention doctrines. Plaintiff filed a motion for partial summary judgment, arguing that there are no material issues of disputed fact and that it is entitled to judgment as a matter of law on its Commerce Clause and Act 90 claims. For the reasons discussed below, the motions to dismiss will be granted in part and denied in part and the motion for summary judgment will be denied.

## II. <u>Preliminary Matters</u>

### A. Standing

Defendant GLRA argues that Plaintiff's complaint should be dismissed because Plaintiff lacks standing to bring a commerce clause claim since it only conclusorily alleges that it is engaged in interstate commerce and because it has never sought GLRA's permission to transport municipal waste out of state. To satisfy the constitutional standing requirements, Plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S. 167, 180-81 (2000). Put another way, "Article III standing is satisfied when a plaintiff demonstrates that it has suffered an actual or

threatened injury as a result of the defendant's conduct which is capable of redress." Schering Corp. v. Food and Drug Admin., 51 F.3d 390, 395 (3d Cir. 1995) (citing Wheeler v. Travelers Ins. Co., 22 F.3d 534, 537-38 (3d Cir. 1994)).  Waste haulers and processors have historically had standing in commerce clause cases such as this one.  See, e.g., Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 183 (1st Cir. 1999) (in-state waste hauler met constitutional and prudential standing requirements to challenge town's waste management scheme) (citing General Motors Corp. v. Tracy, 519 U.S. 278, 286-87 (1997)); Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County, 111 F.3d 1372, 1378-79 (8th Cir. 1997) (waste haulers and processors had standing to challenge ordinance requiring waste disposal at designated facilities).

There can be no doubt that Plaintiff in this case has met the constitutional standing requirements.  First, it has alleged that it suffers economic injury by being subject to Defendants' waste regulation scheme in that it is forced to pay high tipping fees for waste disposal within the County and that it faces fines or administrative penalties if it were to haul waste out of state, such as those which have already been levied against it for out-of-county waste disposal.  See General Motors Corp. v. Tracy, 519 U.S. 278, 286-87 (1997) (collecting cases holding that in-state businesses generally have standing to challenge law that discriminates against out-of-state interests); see also Houlton, 175 F.3d at 183 (plaintiff had standing despite failure to claim it hauled garbage out of state or wished to do so because "In Commerce Clause jurisprudence, cognizable injury is not restricted to those members of the affected class against whom states or their political subdivisions ultimately discriminate.").  Next, the injury is fairly attributable to Defendants, as the requirement that all waste generated within the County be disposed of at the GLRA site is a barrier to Plaintiff's ability to  competitively find lower

tipping fees by dumping out of state.  Thus, the third element is also met:  if Defendants' regulatory

scheme were to be declared violative of the Commerce Clause as the Plaintiff desires, Plaintiff would

be able to compete economically in a broader market for waste disposal.

      In addition to the constitutional standing requirements, federal courts have developed

prudential standing considerations "that are part of judicial self-government."  UPS Worldwide

Forwarding, Inc. v. United States Postal Serv., 66 F.3d 621, 626 (3d Cir. 1995).  Here, GLRA

maintains that Plaintiff lacks prudential standing to bring these claims.   The test for assessing whether

a party satisfies prudential standing requires that:

> (1) a litigant assert his [or her] own legal interests rather than those of third parties,
> (2) courts refrain from adjudicating abstract questions of wide public significance
> which amount to generalized grievances, and (3) a litigant demonstrate that her
> interests are arguably within the zone of interests intended to be protected by the
> statute, rule or constitutional provision on which the claim is based.

Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County, 271 F.3d 140, 145-46 (3d Cir.

2001).  "In addressing that component of prudential standing, we have advocated a 'liberal'

employment of the zone of interests test, explaining that it is 'not meant to be especially

demanding.'"  Id. at 146 (quoting Davis v. Philadelphia Hous. Auth., 121 F.3d 92, 98, 101 (3d

Cir. 1997).  In Oxford Associates, the Court of Appeals for the Third Circuit addressed the

prudential standing requirements in the context of a dormant Commerce Clause challenge to a

waste generation fee structure.  271 F.3d 140.  The Court held that the Plaintiff waste generators,

who were subject to a non-competitive fee to use a designated waste processing facility, were

within the zone of interests intended to be protected by the Commerce Clause.  See id. at 147-48

(citing C & A Carbone, Inc. v. Town of Clarkstown, N.Y., 511 U.S. 383, 392 (1994) and

discussing dormant commerce clause cases in other Circuits:  On the Green Apartments L.L.C. v.

City of Tacoma, 241 F.3d 1235 (9th Cir. 2001) (finding prudential standing requirements met by building owners in their challenge to ordinance designating single waste disposal facility); and Huish Detergents, Inc. v. Warren County, Ky., 214 F.3d 707 (6th Cir. 2000) (allowing consumers/waste generators to bring a challenge to a municipal waste scheme)).

Similarly here, Plaintiff meets the prudential standing requirements because as a waste hauler participating in the stream of commerce affected by the Ordinance and Regulations, it has asserted its own right to access interstate waste disposal markets and is clearly within the zone of interests protected by the Commerce Clause.

**B.      Ripeness & Failure to Exhaust**

Defendant GLRA further maintains that Plaintiff has administrative and state court remedies that it could pursue, including an appeal to GLRA and an appeal to the Court of Common Pleas in Lebanon County.  Therefore, GLRA argues, Plaintiff's complaint should be dismissed both for failure to exhaust and because it is not ripe for determination until available remedies have been exhausted.

Plaintiff notes that it has withdrawn all claims related to the monetary penalties assessed by GLRA so there are no administrative remedies remaining to be exhausted and that in any case, there is no obligation to do so when bringing a constitutional claim.  The Court agrees.  Not only is it questionable whether exhaustion would be required here, Plaintiff's constitutional claims could not be addressed in the manner in which GLRA proposes.  See Empire Sanitary Landfill, Inc. v. Dep't of Envtl. Res., 684 A.2d 1047, 1054 (Pa. 1996) (discussing three exceptions to administrative exhaustion requirement in the context of a constitutional challenge to a flow control ordinance and holding that failure to exhaust did not foreclose plaintiffs' challenge).  There is no indication that GLRA or Lebanon County would be able to provide the relief Plaintiff seeks or that going through the

process is a prerequisite to bringing their constitutional challenge.  There is likewise no requirement that a party facially challenging an ordinance on commerce clause grounds must first ask for an exception to the ordinance be made on its behalf before the complaint is ripe for federal adjudication.  See Peachlum v. City of York, Pa., 333 F.3d 429, 435 (3d Cir. 2003) (discussing ripeness doctrine for first amendment facial challenge).

Rather, the two fundamental considerations for determination of a ripeness question are: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967) (overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 105 (1977)).  Factors relevant to the fitness inquiry include "whether the issues presented are purely legal, as opposed to factual, . . . whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the extent to which a claim is bound up in the facts; and whether the parties to the action are sufficiently adverse." Philadelphia Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL-CIO v. Ridge, 150 F.3d 319, 323 (3d Cir. 1998) (citation omitted); see also Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990) (analyzing ripeness in pre-enforcement declaratory judgment action by examining the adversity of the parties' interests, the probable conclusiveness of a judgment, and the practical utility to the parties of rendering a judgment).

Plaintiff's commerce clause claims are certainly ripe for review under this rubric.  While it would be helpful to see the process by which Defendants might approve or disapprove of a formal proposal to dispose of waste out of state, it is not necessary for Plaintiff to be a party making such an application in order to make the requisite showing of discrimination.  See Philadelphia Federation of Teachers, 150 F.3d at 324-25 (finding procedural due process claim required specific factual setting to be ripe for review, as it was unclear how the statute at issue would

operate against the plaintiffs' interests).  Furthermore, Plaintiff has sufficiently alleged that it faces

hardship pending the outcome of a final decision in this case, as it is required to pay high tipping

fees and is subject to penalties for noncompliance with the scheme.

Similarly, Plaintiff's claim for a violation of Act 90 is ripe for review as it raises a legal

issue which facilitates entry of declaratory judgment.  See NE Hub Partners, L.P. v. CNG

Transmission Corp., 239 F.3d 333, 344 (3d Cir. 2001) (analyzing fitness for review in a federal

preemption case) (citing State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201,

(1983) ("The question of pre-emption is predominantly legal, and although it would be useful to

have the benefit of [the state's interpretation and application of its regulations], resolution of the

pre-emption issue need not await that development.")).  While this case presents a different scenario,

as it relates only to state legislation, there is no reason for ripeness considerations why the Court cannot

review the claim.

Finally, Plaintiff's retaliation claim is ripe for review.  The facts alleged by Plaintiff have already

occurred and no contingent events or further factual development would affect the fitness for review of

this claim.  Philadelphia Federation of Teachers, 150 F.3d at 323.  Accordingly, Plaintiff's complaint

is ripe for disposition and GLRA's motion will be denied on this ground.

### C.      Abstention

Defendant GLRA argues that this Court should abstain from exercising jurisdiction in this case,

both under Burford v. Sun Oil Co., 319 U.S. 315 (1943) and Railroad Commission of

Texas v. Pullman Co., 312 U.S. 496 (1941).  Burford abstention is appropriate when a party seeks to

enjoin the enforcement of a state order in federal court.  319 U.S. 315.  Because Plaintiff has

withdrawn its challenge to the state order assessing monetary penalties, Burford is no longer implicated

in this case.

Abstention pursuant to <u>Pullman</u> is authorized "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." <u>Hawaii Hous. Auth. v. Midkiff</u>, 467 U.S. 229, 236 (1984) (citing <u>Pullman</u>, 312 U.S. at 500).   Abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and one which should be invoked "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976) (quoting <u>Allegheny County v. Frank Mashuda Co.</u>, 360 U.S. 185, 188-89 (1959)); <u>see also</u> <u>Planned Parenthood of Cent. N.J. v. Farmer</u>, 220 F.3d 127, 149 (3d Cir. 2000)  ("<u>Pullman</u> abstention should be rarely invoked").

The Court of Appeals for the Third Circuit has identified the rationale for <u>Pullman</u> abstention as "twofold:  (1) to avoid a premature constitutional adjudication which could ultimately be displaced by a state court adjudication of state law; and (2) to avoid 'needless friction with state policies.'" <u>Planned Parenthood</u>, 220 F.3d at 149 (quoting <u>Pullman</u>, 312 U.S. at 500).  Before a federal court can abstain under these circumstances, the court must determine whether three "exceptional circumstances" are present.  <u>Id.</u> These circumstances are:

> (1) There are uncertain issues of state law underlying the federal constitutional claims brought in federal court;
>
> (2) The state law issues are amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; and
>
> (3) A federal court's erroneous construction of state law would be disruptive of important state policies.

11

> If all three of these circumstances are present, the district court must then exercise
> its discretion as whether abstention is appropriate "by weighing such factors as the
> availability of an adequate state remedy, the length of time the litigation has been
> pending, and the impact of delay on the litigants."

Philadelphia City Council v. Schweiker, 40 Fed. Appx. 672, 675-76 (3d Cir. 2002) (quoting

Planned Parenthood, 220 F.3d at 150); see also Chez Sez III Corp. v. Township of Union, 945

F.2d 628, 631 (3d Cir. 1991) (listing the three special circumstances).

In this case, GLRA argues that the issues of "preemption and allocation of responsibilities

between state and local government under Acts 90 and 101 would be more appropriately decided by

Pennsylvania state courts than by the federal courts." (Doc. No. 14 at 28).  GLRA characterizes

Plaintiff's state law claim as the "gravamen" of its complaint, which if resolved in Plaintiff's favor by the

state courts, would obviate the need for a ruling in this Court on Plaintiff's other claims.  GLRA also

asserts that if a state court rules in favor of Defendants on the Act 90 claim, "there can be no possible

federal constitutional issues in this case." (Doc. No. 33 at 14).  Plaintiff points out that it has not

challenged Act 101, and asserts that its commerce clause challenge is its primary claim, a constitutional

question properly decided by this Court.  Furthermore, Plaintiff argues that the constitutional challenge

to the waste management system brought under the dormant Commerce Clause will not be affected by

resolution of the state law question either for or against Plaintiff since the two claims challenge different

and unrelated portions of the Ordinance.

Although Plaintiff argues that the federal and state law challenges to the County Ordinance are

separate, in its complaint, it asks for identical relief for both claims:  a judgment striking down the

Ordinance and an injunction enjoining the enforcement of the Ordinance.  (See wherefore clauses,

Counts I & V, ¶¶ 67; 120, Doc. No. 1).  Considering the complaint in this light, it appears as if the

relief Plaintiff is seeking can be accomplished through either claim.  Thus, it would be reasonable to say, based on the demand in the complaint, that if Plaintiff succeeded on its Act 90 claim and the Ordinance was declared unlawful and Defendants were enjoined from enforcing it, there would be no need to decide the federal constitutional issue.  And presumably, the state courts would be better equipped to reach this conclusion.  City of Houston, Tex. v. Hill, 482 U.S. 451, 468-69 (1987).  However, "the mere presence of a potentially dispositive question of state law has never been a sufficient basis in itself for declining federal jurisdiction under Pullman."  Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743, 747 (3d Cir. 1982) (internal citation omitted).

"In cases involving a facial challenge to a statute, the pivotal question in determining whether abstention is appropriate is whether the statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.'"  City of Houston, 482 U.S. at 468 (quoting Harman v. Forssenius, 380 U.S. 528, 534-35 (1965)).  If the state law at issue is settled, federal courts are equally equipped to apply that law to the issues of the case.  Heritage Farms, 671 F.2d at 747.  Likewise, when a statute is not ambiguous, there is no need to abstain even if state courts have never interpreted the statute.  Harman v. Forssenius, 380 U.S. 528, 534 (1965).  Here, the state law question is not uncertain or ambiguous and therefore the first special consideration for Pullman is not met.  Planned Parenthood, 220 F.3d at 150.  Plaintiff has claimed that the Ordinance runs afoul of the Waste Transportation Safety Act, Act 90, which prohibits counties and municipalities from implementing waste transportation authorization programs or licensing programs after the effective date of the Act.  27 Pa. C.S.A. § 6203(c); Doc. No. 1, Count V.  As discussed more fully below, this statute is not ambiguous and therefore "not fairly subject to an interpretation which will avoid or modify the federal constitutional question[.]"

Baggett v. Bullitt, 377 U.S. 360, 378 n.11 (1964).  Accordingly, "it is the duty of a federal court to decide the federal question when presented to it." Id. (citation omitted); see also Hawaii Hous. Auth., 467 U.S. at 236-37 (1984) (finding no uncertainty of state law since the challenged act was unambiguous); Procunier v. Martinez, 416 U.S. 396, 404 (1974) (finding that "no reasonable interpretation" of the state law "would avoid or modify the federal constitutional question"), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989)).

Moreover, even absent this consideration, the second exceptional condition, whether the state law issue is amenable to an interpretation that would obviate or narrow the scope of the constitutional claims, is also not met.  The standard for this second exceptional consideration, the amenability question, is a "fairly high threshold requiring a substantial possibility that a state interpretation would obviate the need for a federal constitutional decision." Planned Parenthood, 220 F.3d at 150 (quoting Artway v. Attorney General of N.J., 81 F.3d 1235, 1271 n.34 (3d Cir. 1996)) (emphasis added).  This is not the case here.  If a court were to find that Act 90 invalidated the County's licensing scheme as argued by Plaintiff, the Ordinance as it relates to waste disposal at a designated site, which has been separately challenged on constitutional grounds, would not be affected.  An invalidation of the licensing portion of the County's Ordinance, found in section 2, would not invalidate the portion of the Ordinance that Plaintiff challenges on dormant Commerce Clause grounds, the waste flow control provision, section 3.  Further, if a court were to uphold section 2 of Ordinance in light of Plaintiff's Act 90 challenge, Plaintiff would still be able to pursue its constitutional challenge to the flow control portions of the Ordinance.

Under Pullman, if constitutional adjudication can be avoided by a definitive ruling on the state issue that would terminate the controversy, a federal court should not exercise jurisdiction.

14

<u>Pullman</u>, 312 U.S. at 498; <u>Planned Parenthood</u>, 220 F.3d at 150.  In this case, a ruling on the state law issue could neither provide the relief that Plaintiff seeks nor substantially narrow the constitutional question, thus there is no basis for abstention under <u>Pullman</u>.  Accordingly, GLRA's motion to abstain will be denied.

### III.   <u>Discussion of  Claims</u>

#### A.      <u>Standards for Motions</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law.  <u>Markowitz v. N.E. Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  <u>Johnsrud v. Carter</u>, 620 F.2d 29, 33 (3d Cir. 1980).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906, 908 (3d Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Lake v. Arnold</u>, 112 F.3d 682, 688 (3d Cir. 1997) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), overruled on other grounds by <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982)).      To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record.  <u>See</u> 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990).   A court may treat a 12(b)(6) motion as one for summary judgment if matters outside the pleadings are considered.  However, a court need not convert the

12(b)(6) motion to a motion for summary judgment to examine documents integral to or explicitly relied upon in the complaint.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. Pro. 56.  A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 249.  The nonmoving party receives the benefit of all reasonable inferences. Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint.  Instead, [it] must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial."  Id. at 322.

### B.    Commerce Clause Claim

Both Defendants have moved to dismiss Plaintiff's commerce clause claim, arguing that because

the Ordinance does not prohibit waste disposal at out-of-state facilities, it is not discriminatory and

therefore any challenge must fail.  At the same time, Plaintiff has filed a motion for summary judgment

on this claim, arguing that the Ordinance discriminates against out-of-state commerce on its face and

therefore must be declared unconstitutional.

The Commerce Clause grants to Congress the affirmative power "[t]o regulate Commerce .

. . among the several States."  U.S. Const. art. I, § 8, cl. 3.  "Although the Clause thus speaks in

terms of powers bestowed upon Congress, the [Supreme] Court long has recognized that it also

limits the power of the States to erect barriers against interstate trade."  Lewis v. BT Inv.

Managers, Inc., 447 U.S. 27, 35 (1980).  The negative or dormant aspects of the Commerce

Clause that limit state authority apply to subject areas in which "Congress has not affirmatively

acted to either authorize or forbid the challenged state activity."  Norfolk S. Corp. v. Oberly, 822

F.2d 388, 392 (3d Cir. 1987).  Thus, any state regulation of interstate commerce is subject to

scrutiny under the dormant Commerce Clause unless such regulation has been preempted or

expressly authorized by Congress.  Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen

Freeholders of Atl. County, 48 F.3d 701, 710 (3d Cir. 1995).

"The initial question in a dormant Commerce Clause case is whether the state regulation at

issue discriminates against interstate commerce 'either on its face or in practical effect.'"

Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd., 298 F.3d 201, 210 (3d Cir. 2002)

(quoting Maine v. Taylor, 477 U.S. 131, 138 (1986)).  It is established that waste and waste disposal

are part of interstate commerce, and thus, the flow control Ordinance at issue here regulates interstate

commerce.  C & A Carbone, Inc. v. Town of Clarkstown, N.Y., 511 U.S. 383, 389-91 (1994);

Chem. Waste Mgmt., Inc. v. Hunt, 504 U.S. 334, 340 n.3 (1992).  The issue, then is the manner in

which the Ordinance affects interstate commerce: "whether it regulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce." Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or., 511 U.S. 93, 99 (1994) (internal citation and quotation marks omitted); see also Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. County, 48 F.3d 701, 710 (3d Cir. 1995). Plaintiff claims in its motion for summary judgment that the Ordinance facially discriminates against out-of-state interests and is therefore nearly per se invalid. See Or. Waste Sys., 511 U.S. at 99 ("If a restriction on commerce is discriminatory, it is virtually per se invalid.") (citations omitted). On the other hand, Defendants argue that because their waste control scheme does not prohibit access by out-of-state interests, it cannot be considered discriminatory either on its face or in effect.

The burden of showing that the statute discriminates rests on the party challenging the statute. Harvey & Harvey, Inc. v. County of Chester, 68 F.3d 788, 802 (3d Cir. 1995). There is no doubt that Plaintiff has at least alleged a commerce clause complaint upon which relief can be granted. The Lebanon Ordinance restricts waste disposal to facilities designated by GLRA and the Regulations establish a fee schedule for dumping and penalties for diverting waste to a non-designated facility. Although, as Defendants point out, the Ordinance and Regulations leave open the possibility for designation of other sites, or perhaps special orders allowing diversion of municipal waste, no other site has been so designated. In fact, the definition of "designated facility" in the Ordinance is: "Any municipal waste storage, collection, transfer, processing, or disposal facility or site constructed, owned, or operated by or on behalf of the Authority." (Doc. No. 1, ex. A, Ordinance No. 15 at § 1). Contrary to Defendants' assertion, the lack of an absolute ban on use of out-of-state processing

facilities does not save the waste flow control scheme from a constitutional challenge.  Atl. Coast, 48 F.3d at 713; Harvey, 68 F.3d at 806; see also Carbone, 511 U.S. at 393 (finding that the municipality cannot steer solid waste away from out-of-town disposal sites "that it might deem harmful to the environment.  To do so would extend the town's police power beyond its jurisdictional bounds.").

Furthermore, contrary to Defendants' assertion, there is no requirement that Plaintiff must first make an attempt to obtain approval for waste disposal outside of the GLRA facility before it can make a claim; there is not even a requirement that Plaintiff even allege that it desires to dispose waste out of state, although here it has done so.  Houlton, 175 F.3d at 183 (citing General Motors Corp., 519 U.S. at 186).  Accordingly, Defendants' motions to dismiss for failure to state a claim upon which relief may be granted will be denied.

Thus, the issue here is whether Plaintiff is entitled to judgment as a matter of law on this claim.  Plaintiff claims that an out-of-state landfill is precluded from the face of the Ordinance from participating in the waste disposal market, so the Ordinance is discriminatory on its face. "Discrimination against interstate commerce in favor of local business or investment is per se invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest."  Carbone, 511 U.S. at 392 (citing Maine v. Taylor, 477 U.S. 131 (1986)).  However, the Ordinance and regulatory scheme at issue in this case does not discriminate against interstate commerce on its face simply by designating the Authority landfill as the only disposal site to be used without a special exception.  See Harvey, 68 F.3d at 798 ("That the ordinance requires the use of the selected facility, thus prohibiting the use of

non-designated facilities (which may be out of state), does not itself establish a Commerce Clause

violation."). Regardless, it is very possible that the Ordinance may discriminate in its effect. Plaintiff's

discussion, however, blends the facial analysis with a discriminatory effect analysis. In order for this

Court to determine whether out-of-state interests compete on a level playing field or whether the flow

control scheme actually discriminates against interstate commerce such as to trigger strict scrutiny

analysis, "the court must closely examine, for signs that out-of-state bidders do not in practice enjoy

equal access to the local market, the following: (1) the designation process; (2) the duration of the

designation; and (3) the likelihood of an amendment to add alternative sites." Harvey, 68 F.3d at

801. There is no evidence in the record related to these considerations on either side or ultimately

whether the Ordinance is discriminatory in effect. Therefore, the court will deny Plaintiff's motion

without prejudice to re-file at a more appropriate time.

### C.      Retaliation Claim

Count IV of Plaintiff's complaint is a claim against GLRA for first amendment retaliation,

brought pursuant to 42 U.S.C. § 1983. Plaintiff claims that GLRA assessed monetary penalties and

otherwise targeted Plaintiff in order to retaliate for Plaintiff's challenge to the Ordinance and

Regulations. GLRA has moved to dismiss this claim, arguing that there is no causal connection between

Plaintiff's exercise of its judicial rights and the complained of conduct.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S.

42, 48 (1988). "The Supreme Court has consistently held that an individual's constitutional right

of access to court is protected by the First Amendment's clause granting the right to petition the

government for grievances." Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) (citing

California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510, (1972)).  Moreover,

official retaliation for the exercise of any constitutional right creates an actionable claim under

Section 1983." Id. (citing White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990) ("Retaliation

for the exercise of constitutionally protected rights is itself a violation of rights secured by the

Constitution actionable under section 1983.")).

 Defendants argue that Plaintiff has failed to state a claim because its protected activity, filing the

civil complaint, occurred after the enforcement action, penalties, and other actions complained of had

already taken place.  Plaintiff argues that the actions were retaliatory in anticipation of Plaintiff's

challenge to the flow control scheme.  (Doc. No. 27 at 18).  In other words, Plaintiff claims that its

protected activity was its intent to challenge the waste disposal scheme.  In its complaint, Plaintiff

alleges that the conduct of GLRA and the timing of its actions "demonstrate that the GRLA and its

representatives have acted in order to retaliate against Lebanon Farms for its exercise of its rights to

challenge the Municipal Waste Ordinance, GLRA Rules & Regulations and the municipal waste

mandates including licensing and flow control through the judicial process."  (Doc. No. 1 at ¶ 98).

 Although Plaintiff does not allege that it expressed its intent to GLRA in advance of this litigation to

challenge the municipal waste scheme,  its intent to perform a protected activity, if known to Defendant,

could be considered a protected activity.  See Anderson v. Davila, 125 F.3d 148, 162 (3d Cir.

1997) (finding that plaintiff's lawsuit feel within the access to courts doctrine even though he had

not yet filed suit at the time of retaliatory actions because he had filed EEOC charges, his attorney had

provided a written notice of his intent to file a claim, and the newspaper had reported the impending

lawsuit).  Therefore, taking the facts alleged in the complaint as true, this Court cannot say that "no

relief could be granted under any set of facts that could be proved consistent with the allegations."

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Accordingly, GLRA's motion to dismiss

Count IV will be denied.

     **D.**    **Act 90 Claim**

In Count V of its complaint, Plaintiff brings a state law claim for violation of Act. 90.  In 2002,

the Pennsylvania legislature enacted Act 90, which establishes a waste transportation safety program

"to protect the public health, safety and welfare and the environment."  27 Pa. C.S.A. § 6203(a).  The

Act further provides, in relevant part:

> (b) The Waste Transportation Safety Program shall:
>
> > (1) Ensure the responsible and safe transportation of municipal or residual waste to processing and disposal facilities by requiring written authorization from the department.
> >
> > (2) Prohibit a waste processing or disposal facility from accepting municipal or residual waste from a waste transportation vehicle engaged in commerce without a valid authorization sticker issued by the department.
> >
> > (3) Provide the department with the authority to deny or revoke written authorization where the agency finds that the transporter has failed or continues to fail to comply with applicable laws and regulations.
> >
> > (4) Establish a transportation authorization fee for the administration and enforcement of this chapter.
>
> (c) Notwithstanding anything to the contrary in this chapter, the Solid Waste Management Act or the Municipal Waste Planning, Recycling and Waste Reduction Act, no county and no municipality may <u>implement</u> a municipal waste or residual waste transportation authorization or licensing program <u>after</u> the effective date of this chapter.

27 Pa. C.S.A. § 6203(b) & (c) (emphasis added).  Plaintiff argues that this final provision,

regarding the Act's relationship to other laws, precludes the County and GLRA from continuing

its licensing program as provided for in the Ordinance and accompanying regulations.  Defendants

argue that because its comprehensive waste management scheme was enacted and promulgated

eleven years before the effective date of Act 90, its licensing requirements are not preempted by

the Act.

The resolution of this issue essentially calls for a statutory interpretation of the word

"implement."   The basic tenets of statutory construction require a court to construe the words of

the statute according to their plain meaning.  1 Pa. C.S. § 1903(a); Commonwealth v. Stanley, 446

A.2d 583, 587 (Pa. 1982).  When the words of a statute are clear and unambiguous, a court cannot

disregard them under the pretext of pursuing the spirit of the statute.  1 Pa. C.S. § 1921(a);

Coretsky v. Board of Comm'rs of Butler Township, 555 A.2d 72 (Pa. 1989). Only if a statute is

ambiguous may a court review the intent of the legislature.  Id. at 74 (citing 1 Pa. C.S. § 1921(c));

see also Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1374 (3d Cir. 1996) (noting that a

court must look beyond the statutory language when a word or phrase is ambiguous).

Plaintiff argues that the common understanding of "implement" does not refer merely to the

initial execution of the scheme, but to any future "carrying out" of the licensing system.  Therefore,

according to Plaintiff, Defendants are continually "implementing" the program after the effective

date of Act 90 and therefore the Ordinance and Regulations violate Act 90.  Defendants argue that

the meaning of "implement" is "to put into place" and that to interpret it otherwise implicitly

overrules part of Act 101, which obligates the Counties to regulate waste management and

authorizes the Counties to establish licensing schemes.

Although a statute may be repealed either by express legislative act or by implication,

"where express terms of repeal are not used, the presumption is always against an intention to

repeal an earlier statute, unless there is such inconsistency or repugnancy between the statutes as to

preclude the presumption, or the latter statute revises the whole subject matter of the former."
<u>Commonwealth v. Milano</u>, 446 A.2d 325,327 (Pa. Super. Ct. 1982). "Because implied repeals are
not favored in the law, the legislative intent to impliedly repeal a statute by enacting another must
be clearly shown." <u>Id.</u> (citations omitted). Furthermore, a court "must attempt to find a reasonable
way to reconcile the statutes" to avoid repeal by implication. <u>Lewis v. Erie Ins. Exch.</u>, 421 A.2d
1214, 1218 (Pa. Super. Ct. 1980) (citing <u>Wyoming Sand & Stone Co. v. Dep't of Revenue</u>, 384
A.2d 1193, 1197 (Pa. 1978) ("Such implied repeals are not favored and may be found only where
there is no other reasonable way to reconcile two statutes"); <u>Pa. Tpk. Comm'n v. Sanders &
Thomas, Inc.</u>, 336 A.2d 609, 614 (Pa. 1975)).

"Implement," as it is used in this statute, is not ambiguous. Although there is no temporal
definition in the Act itself, the common understanding of the word, meaning "to give practical
effect to," or "to carry into effect"[4] includes an element of newness. In other words, in common
usage of the word, something is "implemented" only at the time it is initially given practical effect
or commenced, such as when a plan first goes into effect. Without question, Defendants have
"enforced" their licensing scheme after the effective date of the Waste Transportation Safety Act.
Furthermore, it is undisputed that the County Ordinance was adopted over eleven years prior to the
effective date of that Act. Under the clear terms of this statute then, the County "implemented" its
licensing program before the effective date of the Act.

---

[4]Merriam-Webster on-line dictionary, www.m-w.com, "implement." The Oxford English
Dictionary defines implement as:
> **1a.** *trans.* To complete, perform, carry into effect (a contract, agreement, etc.); to
> fulfil (an engagement or promise).
> **b.** To carry out, execute (a piece of work).
> **c.** To fulfil, satisfy (a condition).

Oxford English Dictionary (2d ed. 1989), "implement, v."

Moreover, to read the statute otherwise would implicitly overrule the portion of Municipal Waste Planning, Recycling and Waste Reduction Act, Act 101, which allows counties, as part of their power and duty "to insure the availability of adequate permitted processing and disposal capacity for the municipal waste which is generated within its boundaries," to "require all persons to obtain licenses to collect and transport municipal waste . . . ."  53 P.S. § 4000.303(a).  To avoid repealing this other statute, as this Court is required to do, Act 90 should be read in the reconciliatory way discussed above.  This portion of the Act is then better read as a grandfather provision, wherein municipalities and counties with existing licensing programs are able to continue those programs while no new programs are to be effectuated, or "implemented" after the effective date of Act 90.  Thus, it is clear that the County did not "implement" its licensing scheme after the effective date of the Act under the clear terms of the statute.  Accordingly, there are no circumstances under which Plaintiff can state a claim for violation of Act 90.  Therefore, Defendants' motions to dismiss this claim will be granted.

IV.   **ORDER**

Therefore, for the reasons discussed above, **IT IS ORDERED THAT**:

1.   Defendant County of Lebanon's Motion to Dismiss (Doc. No. 10) is **GRANTED** in

part as follows:  Plaintiff's state law claim for violations of Act 90 (Count V) is

**DISMISSED**.  The remainder of the motion to dismiss is **DENIED**.

2.   Defendant Greater Lebanon Refuse Authority's Motion to Dismiss and Motion to

Abstain (Doc. No. 11) is **GRANTED** in part as follows:  Plaintiff's state law claim for

violations of Act 90 (Count V) is **DISMISSED**.  The remainder of the motion to

dismiss is **DENIED**.  The motion to abstain is **DENIED**.

3.   Plaintiff Lebanon Farms Disposal, Inc.'s Motion for Partial Summary Judgment (Doc.

No. 24) is **DENIED**.

4.   Defendants' joint motion for reconsideration of the Court's April 12, 2004 Order

(Doc. No. 56) is **DENIED** as moot.

   **IT IS FURTHER ORDERED THAT** a case management conference will be held by

telephone on July 29, 2004 at 2:00 p.m.  The parties shall file an updated joint case management plan

on or before July 26, 2004.


                                                   S/Yvette Kane
                                                  Yvette Kane
                                                  United States District Judge

Date:  July  9 , 2004